J-A11012-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :            PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| RICHARD SCOTT LENHART | : |
| | : |
| Appellant | :   No. 708 MDA 2025 |
| | : |

Appeal from the Judgment of Sentence Entered March 3, 2025
In the Court of Common Pleas of Centre County Criminal Division at
No(s): CP-14-CR-0000610-2021

BEFORE: BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BECK, J.:                   **FILED JUNE 30, 2026**

Richard Scott Lenhart ("Lenhart") appeals from the judgment of sentence entered by the Centre County Court of Common Pleas ("trial court") after a jury convicted him of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse with a child, sexual assault, indecent assault – complainant less than thirteen years of age, endangering the welfare of children, and corruption of minors.[1] On appeal, Lenhart argues that the jury's verdict was against the weight of the evidence and also raises several evidentiary claims. Because we conclude that each issue Lenhart raises on appeal lacks merit or is waived, we affirm.

---

[1] 18 Pa.C.S. §§ 3121(c), 3122.1(b), 3123(b), 3124.1, 3126(a)(7), 4304(a), 6301(a)(1)(ii).

The trial court summarized the facts and procedural history of this case as follows:

> In May 2018, the victim's mother contacted law enforcement, reporting that her daughter (the victim) disclosed sexual abuse by her father ([Lenhart]) during counseling sessions. However, the mother reported that the victim was still unable to talk about the abuse. In July 2019, the victim contacted the State College Police, reported sexual abuse, and indicated that she was ready to file a police report. On March 17, 2020, the victim met with Special Agent Christopher Weaver with the Pennsylvania Office of Attorney General and Detective Craig Ripka with the State College Police Department. Over a two-day period, the victim reported extensive sexual abuse by her father. The victim was 22 years old at the time of her report and relayed that most of the sexual abuse occurred in her childhood home.
>
> At trial, the victim (then age 27) recalled inappropriate sexual touching and grooming-type behavior by [Lenhart] from a very young age. She testified that:
>
>> We would watch pornography sometimes, and then we would also – we would have -- there would be touching involved, some finger penetration, and I mean, I guess it kind of started then, but it wasn't as apparent to me because I was younger. But kind of like what we would see, sometimes certain elements of what we saw is kind of what he would, I guess, I don't know if explore is the best word, but kind of explore with me during that time. That would be prior to age eight.
>
> N.T., 8/28/2024, at 62-63. The victim explained finger penetration meant [he inserted] his finger into her vagina. *Id.* at 63. …
>
> The victim testified that she feels "like a lot of the events that occurred were associated with a date or a holiday or something that was significant to either him or I." *Id.* at 49. When she was approximately 8 years old, [Lenhart] had sexual intercourse with the victim for the first time. The victim knew the exact date of the incident—April 16, 2006—because it took place the day of Easter and [Lenhart]'s birthday. *Id.* at 58. [Lenhart]

- 2 -

entered the victim's bedroom after she had been asleep. The victim recalled being woken up by [Lenhart] and then being subject to sexual intercourse, which she clarified was [Lenhart] putting his penis into her vagina. When asked to describe the incident, she testified "I don't remember a lot from that incident, mostly because I was eight. I know that I was in pain, and I know that there was -- he was trying to put his penis inside of my vagina and that there was touching involved and finger penetration involved, and that's kind of all I remember from that." *Id.* at 59.

The victim recalled another incident that occurred close to her 10th birthday. The victim recalled [Lenhart] coming into her room, getting into bed with her, getting on top of her and having sexual intercourse with her. "And then -- but when we were in the bedroom, he had kind of woken me up, and I remember staring at the glow in the dark of the stars on the ceiling." *Id.* at 51. "So there was intercourse. That was like the first real one that I remembered, more so intercourse with his penis being in my vagina. I remember when he was finished there was some blood on the sheets." *Id.* The victim remembered [Lenhart] telling her to be quiet about it. *Id.* at 52. She testified that "it was nice enough and gentle even though it really hurt." *Id.* at 53. She cried afterward "I kind of call it silent crying." *Id.* at 54. When asked if [Lenhart] said anything to her about the pain, the victim responded "he told me that I would get used to it and then kind of just reiterated being quiet." *Id.* at 54.

The victim testified that [Lenhart] sexually abused her between the two incidents discussed above. She described it as "intercourse with his penis in my vagina would occur, as well as touching or me touching or going down on his penis and/or him touching me on my vagina." *Id.* at 66-67.

The victim recalled another incident that occurred in her parents' newly remodeled bathroom sometime near the 10-year-old incident discussed above. *Id.* at 67-68. She recalled entering her parents' bedroom with [Lenhart] and getting into the shower together. They did "different positions we had seen on the computer." *Id.* at 71. …

Trial Court Opinion, 8/12/2025, at 2-5 (record citations modified; typographical errors corrected). The victim further testified to numerous other incidents of sexual abuse that occurred over the course of her childhood.

On August 30, 2024, following trial, the jury found Lenhart guilty of the above-referenced crimes. On December 18, 2024, the trial court sentenced Lenhart to an aggregate term of twenty to forty years in prison. Lenhart filed timely post-sentence motions. On March 3, 2025, the trial court entered an amended sentencing order revising the amount Lenhart owed in restitution. The trial court subsequently denied Lenhart's post-sentence motions in all other respects. This timely appeal followed. Lenhart presents the following issues for review:

> [1.] Did the trial court abuse its discretion in arriving at a verdict that was against the weight of the evidence?
>
> [2.] Did the trial court abuse its discretion in permitting the Commonwealth to introduce 404(b) evidence regarding [Lenhart]'s loss of his license to practice psychology?
>
> [3.] Did the trial court abuse its discretion in permitting the Commonwealth to introduce evidence of [Lenhart]'s use of pornography?
>
> [4.] Did the trial court abuse its discretion in denying the defense access to Children and Youth Services and mental health records of the [victim]?

Lenhart's Brief at 6-7 (unnecessary capitalization omitted).

In his first issue, Lenhart argues that the trial court erred in failing to conclude that the jury's verdict was against the weight of the evidence. *See* Lenhart's Brief at 16-20. Specifically, Lenhart asserts that the verdict was

against the weight of the evidence because the victim lacked credibility. ***See id.*** Lenhart couches his credibility argument, in part, on the victim's testimony characterizing the first instance of sexual abuse as having occurred when she was ten years old, but later testifying to an instance that occurred when she was eight. ***Id.*** at 17. He also argues that the victim lacked credibility because several of the instances she testified to occurred in close proximity to other people, such as the victim's sister and mother, or in public places, but the Commonwealth did not present any testimony corroborating the victim's allegations. ***Id.*** at 17-19. Lenhart further asserts that that the victim lacked credibility because she only testified to "vague, generic facts" and "she could not put forth specific details of the alleged incidents." ***Id.*** at 19.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

> Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022)

(quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

In rejecting Lenhart's challenge to the weight of the evidence the trial court explained:

> Simply stated, the [trial court] does not believe the jury's verdict is contrary to the evidence. The jury's verdict was consistent with the evidence presented at trial. The victim testified credibly, reliably and [in detail] regarding the sexual abuse she endured at the hands of [Lenhart] … over the course of many years[.] …
>
> *         *         *
>
> [The victim] presented specific dates and recollections that were not contradicted. [She] recalled details of seven specific occasions on which [Lenhart] sexually assaulted her. With respect to each occasion, the victim testified regarding the location of the assault and her credible reasons for remembering the location of the assault and when it occurred. …
>
> Furthermore, for each of those seven instances of sexual assault, the victim also described the details of the assaults

- 6 -

including penile and digital penetration as well as kissing, touching, fondling, and other sexual acts including oral and anal sex. [T]he victim testified that each of these sexual assaults were distinct in terms of the sexual acts performed, her reaction to the assaults, her specific recollections, [Lenhart]'s attitude toward her, who may have been present, and the length of time during which the assaults occurred. …

Trial Court Opinion, 8/12/2025, at 12-14.

Our review of the review the record supports the trial court's findings. It reveals that the victim gave detailed descriptions regarding when, where, and how Lenhart sexually abused her, and that she was even able to remember the exact dates that several of the instances of sexual assault occurred. For example, the victim testified regarding an incident of sexual assault that occurred at the Penn State University intramural building, and that she and Lenhart were there because they were going to play racquetball. N.T., 8/28/2024, at 78-79. She recalled that it was snowing and that she could see the lights from the Bryce Jordan Center because it was located near the intramural building. *Id.* at 86. Similarly, she specifically recalled that Lenhart sexually assaulted her on April 16, 2006, as it was Easter Sunday and his birthday, and again in 2013 over the Thanksgiving holiday. *Id.* at 58, 92-100. During her testimony regarding these incidents, the victim testified in specific detail regarding the digital, oral, and vaginal penetration that occurred, the pain these sexual assaults caused her, and Lenhart's mood and demeanor during these incidents of sexual abuse. *See id.* at 58-61, 78-88, 92-100.

It is well established in this Commonwealth that "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Cramer*, 195 A.3d 594, 602 (Pa. Super. 2018). Lenhart seeks for this Court to reweigh the evidence provided by the victim and find that her testimony lacked credibility. It is well settled, however, that the factfinder is "the sole arbiter of the credibility of each of the witnesses," including "questions of inconsistent testimony[.]" *Commonwealth v. Jacoby*, 170 A.3d 1065, 1080 (Pa. 2017) (citation omitted). Indeed, the factfinder "is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit." *Id.* (citation omitted); *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013) (noting that "any conflict in the testimony goes to the credibility of the witnesses and is solely to be resolved by the factfinder") (citation omitted). To that end, the factfinder is free to believe or disregard any part of a witness' testimony. *Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019); *see also Commonwealth v. Collins*, 70 A.3d 1245, 1251 (Pa. Super. 2013) (stating that "[a]n appellate court cannot substitute its judgment for that of the finder of fact") (citation omitted).

Here, the trial court, like the jury, heard all the evidence at trial, including the victim's testimony, and was permitted to resolve any inconsistencies, to the extent any existed, in favor of finding that the verdict was supported by competent evidence. *See Commonwealth v. Gilliam*, 249

A.3d 257, 270 (Pa. Super. 2021) (concluding that the trial court did not abuse its discretion in denying appellant's weight challenge where he merely asked this Court to assume the role of factfinder and reweigh the evidence in his favor). To the extent Lenhart requests that we reweigh the evidence, we decline to do so. *See Collins*, 70 A.3d at 1251.

In short, we discern no abuse of discretion by the trial court in determining that the jury appropriately weighed the evidence before it and that the verdict did not shock the conscience. *See Juray*, 275 A.3d at 1046-47. The trial court therefore did not abuse its discretion in denying Lenhart's challenge to the weight of the evidence.

In his second issue, Lenhart argues that the trial court abused its discretion in allowing the Commonwealth to introduce evidence that he lost his license to practice psychology in the Commonwealth of Pennsylvania. *See* Lenhart's Brief at 20-23. He contends that the admission of this evidence was the improper admission of other crimes, wrongs, or acts evidence in violation of Pennsylvania Rule of Criminal Procedure 404(b) because the loss of his license implied that he committed "a serious ethical or moral violation" and placed him in a negative light before the jury sufficient to overcome his presumption of innocence. *Id.* at 21-22.

Our standard of review of the admissibility of evidence is well settled:

> The admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error.

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Lamont*, 308 A.3d 304, 309 (Pa. Super. 2024) (citation omitted).

Under Rule 404(b)(1), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, the evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2). Thus, under Rule 404(b), evidence of prior bad acts "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes," but "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (en banc). Evidence may be admitted under Rule 404(b)(2) only "if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.*

With respect to the testimony relating to Lenhart's loss of his license to practice psychology, the trial court explained:

> In the instant case, with the [trial court]'s permission, the Commonwealth elicited testimony from the victim that a sexual assault occurred on the day "when [Lenhart] got his license taken away." N.T., 8/28/2024, at 89. The license loss was significant in how the victim remembered the date of the assault. The [c]ourt permitted the introduction of this evidence because it was relevant to provide critical context relevant to the victim's testimony and credibility about one of the assaults. The testimony was probative of the victim's ability to recall the assault and provided evidentiary support for the timeline of abuse.
>
> The [trial court] limited the way [Lenhart]'s license loss could be referenced so that the jury would not draw unfair inferences. It was referred to at trial as a "license" loss not a loss of a "license to practice psychology." By limiting the language in this fashion, the [c]ourt minimized the risk of undue prejudice while allowing the Commonwealth to present relevant and probative evidence that corroborated the victim's recollections. Further, the [c]ourt gave the jury a limiting instruction explaining that "the testimony about [Lenhart] losing his license is not evidence of guilt by him. You must not infer guilt from the testimony about his license. You are not to speculate about the reason for [his] loss of his license. The testimony about a loss of a license is only relevant as to whether or not you believe the sequence of events to which [the victim] testified." N.T., 8/30/2024, at 144-45. The challenged evidence was admissible under Pa.R.E. 404(b)(2) …, as its probative value outweighed any risk of unfair prejudice, and it was appropriately narrowly tailored.

Trial Court Opinion, 8/12/2025, at 19-20 (record citations modified).

The record supports the trial court's determination. It reflects that while the prosecutor was questioning the victim about the various instances of sexual assault that she sustained from Lenhart, she testified that one of the incidents occurred "when he got his license taken away[,] in the fall of 20 – or, November of 2012." N.T., 8/28/2024, at 89. The victim's testimony did

not provide any further details about what license Lenhart lost or why he lost a license. *See id.* at 89-90. Thus, Lenhart's claim that the victim testified that he lost his license specifically to practice psychology is entirely belied by the record. *See id.* Additionally, the record confirms that the trial court provided the jury with a cautionary instruction relating to the victim's testimony regarding Lenhart's loss of a license and instructed that the jury should only consider that testimony as relevant to show the timeframe during which the alleged sexual assault occurred. N.T., 8/30/2024, at 144-45. It is axiomatic that "[t]he law presumes that a jury will follow the trial court's instructions." *Commonwealth v. Gilliam*, 249 A.3d 257, 274 (Pa. Super. 2021).

Furthermore, as Lenhart concedes, the Commonwealth introduced the testimony to help the victim establish when one of the sexual assaults occurred and to bolster her credibility. *See* Lenhart's Brief at 22. This Court has explained that "evidence that bolsters a sexual assault victim's credibility is admissible in certain circumstances and "of particular import and significance" in sexual assault cases. *Commonwealth v. Wattley*, 880 A.2d 682, 687 (Pa. Super. 2005). Sexual assault cases "[b]y their very nature, … have a pronounced dearth of independent eyewitnesses, and there is rarely any accompanying physical evidence[.] In these cases[,] the credibility of the complaining witness is always an issue." *Id.*

In sum, the testimony relating to Lenhart's loss of a license did not specify what license he lost, nor did it detail why he lost this unidentified license. Rather, the testimony only served to help the victim establish exactly when one of the sexual assaults occurred and, thus, bolster her credibility as to the occurrence of that assault. The trial court also provided the jury with a cautionary instruction limiting the jury's consideration of this testimony to this reason. Based on the foregoing, we conclude that the testimony regarding Lenhart's loss of license did not violate Rule 404(b) and discern no abuse of discretion in the trial court's decision to permit that testimony.

In his third issue, Lenhart argues that the trial court erred in permitting testimony regarding his use of pornography. Lenhart's Brief at 23-24. He contends that the evidence of his pornography use was improper evidence of other crimes, wrongs, or acts under Rule 404(b) and was also not relevant, as it "does not establish any element of any of the charged offenses." *Id.* at 22.

"The threshold inquiry with admission of evidence is whether the evidence is relevant." *Commonwealth v. Yale*, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence." *Id.* at 1022 (citing Pa.R.E. 401(a), (b)).

The trial court explained its decision to permit the testimony relating to Lenhart's use of pornography as follows:

The introduction of this evidence was not an abuse of discretion because it provided crucial context for [Lenhart]'s actions and demonstrated a pattern of behavior potentially designed to desensitize the victim to sexual acts. This evidence was probative in that it demonstrated manipulative tactics employed by [Lenhart] and was directly relevant to understanding the nature of the sexual offenses charged. It also assisted the jury in evaluating the victim's credibility. The [trial court] properly determined that the probative value of this testimony outweighed any potential for unfair prejudice, as it helped the jury understand the dynamics of the abuse that occurred and helped with assessing the victim's credibility.

Trial Court Opinion, 8/12/2025, at 20.

At trial, the victim testified that beginning around the time she was eight years old, Lenhart would force her to watch pornography with him and that he would touch her inappropriately, including digital penetration, while doing so. N.T., 8/28/2024, at 62-66. She further explained that during other instances of sexual abuse her father would also use pornography to criticize her performance and show her techniques that she needed to improve or other sexual acts that he wanted her to perform. *See id.* at 70, 89.

We find no support for Lenhart's claim of error. At the outset, we point out that Lenhart's use of pornography to groom the victim and teach her how to perform sexually for his own gratification could easily support a conviction of corruption of minors. The statutory provision under which Lenhart was convicted states:

Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such

> minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii). This Court has explained that "[a]ctions that tend to corrupt the morals of a minor are those that would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Commonwealth v. Person*, 325 A.3d 823, 830 (Pa. Super. 2024).

The Commonwealth's introduction of evidence relating to Lenhart's use of pornography to groom the victim and to critique and teach her techniques in furtherance of his sexual abuse of her was plainly relevant to prove the charge of corruption of minors. There is no question that his actions in this respect would easily offend the sense of decency and morality that most people possess. *See id.*; *see also Yale*, 249 A.3d at 1022. Thus, Lenhart's argument that the testimony regarding his use of pornography was not relevant because it did not establish any element of any of the charged offenses is wholly without merit.

For similar reasons, the evidence of Lenhart's use of pornography was also not improper evidence of other crimes, wrongs, or acts. Not only did his use of pornography occur contemporaneously with his sexual assaults of the victim, but the record reflects that Lenhart directly utilized pornography to facilitate his sexual abuse of the victim. Thus, in no manner did Lenhart's use of pornography constitute evidence of other crimes, wrongs, or acts, as it related directly to his crimes in this case. We therefore conclude that the trial

court did not abuse its discretion in permitting the Commonwealth to introduce this evidence.

In his final issue, Lenhart argues that the trial court erred in denying him access to the victim's mental health records of Centre County Children and Youth Services ("CYS"). *See* Lenhart's Brief at 24-26. He asserts that access to the records was necessary to help him prove that the victim's memories were false. *Id.* at 25. He further asserts that Pennsylvania law disfavors evidentiary privileges and that the "public interest in a proper, fair trial outweighs the public good that limiting access to these records provides." *Id.* at 25-26.

The record reflects that on January 12, 2024, Lenhart filed a "Supplemental Motion for Discovery" in which he sought disclosure of any CYS records relating to the victim, "subject to such protective orders as may be applicable under statutory privileges and confidentiality provisions under the Child Protective Services Law and the Mental Health Procedures Act." Supplement Motion for Discovery, 1/12/2024, at 3. At the hearing on Lenhart's motion, the director of CYS testified that it received a "law enforcement only" report—a report regarding an allegation of abuse where it is "determined there is no role for [CYS] in general"—regarding the victim and that it had stated that she disclosed that she had been sexually abused throughout her childhood. N.T., 1/18/2024, at 10. The director explained that other than ensuring law enforcement received this information, there was

nothing for CYS to do with the report because the victim was an adult at the time the report was made. *Id.* at 10-11.

Following the hearing on Lenhart's motion, the trial court issued an order stating "the parties are satisfied that the only potentially responsive existing records would be a 'law enforcement only' report received by CYS." *Id.* at 17. It further stated that "CYS shall provide a printed copy of its electronic file, with redactions to protect the identity of the referral source only, to [defense counsel]." *Id.* Critically, the order concluded by stating that "both parties agree with the resolution of the discovery issue as outlined in this order." *Id.*

Because the record reflects Lenhart agreed with the resolution of his request for CYS's records relating to the victim and did not raise any other objection relating thereto, he cannot now argue that the trial court erred in denying his request for the victim's CYS mental health records. *See Commonwealth v. Russell*, 209 A.3d 419, 429 (Pa. Super. 2019) ("In order to preserve a claim for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court, or the claim is waived."). As any claim relating to the victim's CYS records is waived, his final issue fails.

Based on the foregoing, we conclude that each of the issues Lenhart has raised on appeal lack merit or is waived. He is therefore not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/30/2026